IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS M. MARSON JR., INC., d/b/a | : | CIVIL ACTION |
| GREENWOOD MUSHROOMS | : | |
| | : | |
| v. | : | |
| | : | |
| ALLIANCE SHIPPERS, INC. | : | NO. 19-1330 |

## MEMORANDUM

**Padova, J.** February 10, 2010

Plaintiff brings this action pursuant to the Carmack Amendment, 49 U.S.C. § 14706, and state law to recover losses it incurred as a result of the delayed delivery of a shipment of mushrooms from its location in Kennett Square, Pennsylvania to several locations around Atlanta, Georgia. Defendant has moved for summary judgment as to all of Plaintiff's claims. For the following reasons, we grant the Motion in part and deny it in part.

## I. FACTUAL BACKGROUND

On Tuesday, July 17, 2018, Plaintiff texted Alan Sweis, a Logistics Account Executive for Defendant, and asked him whether Defendant could cover Plaintiff's Atlanta, Georgia run during the coming weekend. (Pl.'s Ex. B at 8; Sweis Aff. (Def.'s Mem. Ex. 1) ¶ 2.) "Sweis confirmed that Alliance would be able to deliver that run." (Pl.'s Ex. B at 8.) On the morning of Friday, July 20, 2018, Plaintiff emailed Sweis and told him that Plaintiff "will need you to do the normal Saturday run tomorrow." (Pl's Exs. D, E; Sweis Aff. ¶¶ 2, 11.) "'The normal Saturday run' included transportation of goods from Plaintiff to various locations within the State of Georgia." (Sweis Aff. ¶ 13.) Sweis had arranged "the normal Saturday run" for Plaintiff approximately thirteen times prior to July 20, 2018. (Id.) Sweis was not able to complete arrangements for the July 21, 2018 shipment on the 20th, so he texted Matt Marson, a representative of Plaintiff, to let

him know that he would "be up tomorrow at 5 to work on it." (Def.'s Reply Ex. 1.) On July 21, 2018, Defendant entered into an agreement with KG's South East Trucking LLC ("KG's") to transport Plaintiff's shipment of mushrooms to Georgia. (Sweis Aff. ¶ 17; Def.'s Mem. Ex. 2.) Plaintiff's shipment was supposed to be delivered to three locations in the Atlanta area on Sunday, July 22, 2018 and three additional locations in the Atlanta area on Monday, July 23, 2018. (Pl.'s Ex. E.) However, the shipment was delayed because the truck broke down and the original driver abandoned the load. (Pl.'s Exs. J, M; Sweis Aff. ¶ 26.) A new driver picked up the trailer on Tuesday, July 24, 2018 and attempted to deliver the mushrooms to Plaintiff's customers. (Pl.'s Exs. H, N; Sweis Aff. ¶ 26.) However, the customers rejected delivery; one customer explained that the mushrooms were "2 days late with a 4 day shelf life" and were "starting to go bad in some areas." (Pl.'s Ex. N; Sweis Aff. ¶ 27.)

The Complaint alleges one claim against Defendant under the Carmack Amendment, 49 U.S.C. § 14706 (Count I) and, in the alternative, two claims under Pennsylvania law, a claim for breach of contract under Pennsylvania common law (Count II) and a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1, et seq. (Count III). Plaintiff seeks to recover its actual losses of $39,689.01 (the value of the mushrooms in the July 21, 2018 shipment to Atlanta, Georgia) and $3,157.05 (the cost of replacement goods purchased by one of its customers to cover the goods that were not timely delivered), as well as its attorney's fees.[1]

---

[1] Defendant has filed a Counterclaim, seeking the payment of unpaid invoices in the amount of $14,491.00 and its attorney's fees incurred in obtaining the payment of those invoices. Defendant has not moved for summary judgment with respect to its Counterclaim.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In ruling on a summary judgment motion, we consider "the facts and draw all reasonable inferences in the light most favorable to . . . the party who oppose[s] summary judgment." Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)).

## III. DISCUSSION

### A. Count I – The Carmack Amendment

Defendant moves for summary judgment as to Plaintiff's Carmack Amendment claim on two grounds. Defendant first argues that it is not subject to liability under the Carmack Amendment because it acted as a broker in connection with Plaintiff's July 21, 2018 shipment. Defendant also argues that it is entitled to summary judgment with respect to the Carmack Amendment claim, even if the Carmack Amendment applies in this case, because Plaintiff cannot establish that it was damaged by the late delivery of its produce.

#### 1. Application of the Carmack Amendment

Defendant argues that it cannot be liable to Plaintiff under the Carmack Amendment for damages related to the July 21, 2018 shipment because it acted as a broker rather than a motor carrier with respect to that shipment. Defendant relies on Essex Insurance Company v. Barrett Moving & Storage, Inc., 885 F.3d 1292 (11th Cir. 2018). The Eleventh Circuit noted in Essex that, if the defendant "was a 'motor carrier,' the Carmack Amendment applies, state-law claims are preempted, and [defendant] is strictly liable for the damage sustained by the [product] during transportation . . . . If [defendant] was a 'broker,' the Carmack Amendment does not apply . . . ." Id. at 1299; see also Factory Mut. Ins. Co. v. One Source Logistics, LLC, Civ. A. No. 16-6385, 2017 WL 2608867, at *7 (C.D. Cal. May 5, 2017) (stating that the Carmack Amendment does not "apply to brokers"); Sompo Japan Ins. Co. v. B&H Freight, Inc., 177 F. Supp. 3d 1084, 1087 (N.D. Ill. 2016) (noting that "brokers are not liable under the Carmack Amendment"); Total Quality Logistics, LLC v. O'Malley, Civ. A. No. 16-636, 2016 WL 4051880, at *2 (S.D. Ohio July 28, 2016) ("The liability provisions within the Carmack Amendment do not apply to brokers and therefore, a broker is not a proper party in a Carmack Amendment cause of action." (citation

omitted)); Olympus Dairy USA Corp. v. Pavil Assocs., Inc., Civ. A. No. 12-1897, 2013 WL 6493482, at *2 (E.D.N.Y. Dec. 6, 2013) ("The 'Carmack amendment imposes liability on "carriers" [and freight forwarders] but not on "brokers," as those terms are defined by the statute . . . .'" (first alteration in original) (quoting Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc., Civ. A. No. 09-2365, 2011 WL 671747, at *3 (S.D.N.Y. Feb. 18, 2011))) (add'l citation omitted). Defendant maintains that it acted solely as a broker with respect to the July 21, 2018 shipment because it only arranged for the shipment of Plaintiff's produce and KG's transported the produce to Atlanta.

The United States Court of Appeals for the Third Circuit has explained that "[u]nder the Carmack Amendment to the Interstate Commerce Act of 1887, a carrier is liable for damages incurred during a shipment of goods, whereas a broker—someone who merely arranges for transportation—is not liable." Tryg Ins. v. C.H. Robinson, Worldwide, Inc., 767 F. App'x 284, 285 (3d Cir. 2019) (citing 49 U.S.C. § 14706). "The definition of 'carrier' includes 'motor carriers,' which are defined as 'person[s] providing motor vehicle transportation for compensation.'" Id. at 286 (alteration in original) (citing 49 U.S.C. § 13102(3), (14)). "The term 'transportation' is then defined to include 'services related to' (including 'arranging for') the movement of property." Id. (quoting 49 U.S.C. § 13102(23)). "Thus, the definition of 'carrier' encompasses entities that perform services other than physical transportation." Id. "[I]n determining whether a party is a carrier or a broker, the crucial question is whether the party has legally bound itself to transport goods by accepting responsibility for ensuring the delivery of the goods." Id. at 286-87 (citing Essex Ins. Co., 885 F.3d at 1301). "**If an entity accepts responsibility for ensuring the delivery of goods, then that entity qualifies as a carrier regardless of whether it conducted the physical transportation**." Id. at 287 (emphasis added).

"Conversely, if an entity merely agrees to locate and hire a third party to transport the goods, then it is acting as a broker." Id. (citations omitted). "This distinction 'tracks longstanding common-law rules' and derives from the 'commonsense proposition that when a party holds itself out as the party responsible for the care and delivery of another's property, it cannot outsource its contractual responsibility by outsourcing the care and delivery it agreed to provide.'" Id. (quoting and citing Essex Ins. Co., 885 F.3d at 1301). "**In sum, if a party has accepted responsibility for transporting a shipment, it is a carrier**." Id. (emphasis added).

When we analyze whether an entity acted as a carrier or a broker, we "look to how the party acted during the 'specific transaction' at issue, which includes 'the understanding among the parties involved [and] consideration of how the entity held itself out.'" Richwell Grp., Inc. v. Seneca Logistics Grp., LLC, Civ. A. No. 17-11442, 2019 WL 3816890, at *3 (D. Mass. Aug. 14, 2019) (quoting ASARCO LLC v. England Logistics Inc., 71 F. Supp. 3d 990, 998 (D. Ariz. 2014) (additional citations omitted). "[C]ourts have found that a party is a carrier in a 'specific transaction' if it takes responsibility for a shipment, whether or not it performed the actual transportation or labels itself as a broker." Id. (citing Tryg, 767 F. App'x at 287; Essex Ins., 885 F.3d at 1302; ASARCO, 71 F. Supp. 3d at 998; Lumbermens Mut. Cas. Co. v. GES Exposition Servs., 303 F. Supp. 2d 920, 921 (N.D. Ill. 2003)). Thus, "'[w]hether a company is a broker or a carrier is not determined by what the company labels itself, but by . . . its relationship to the shipper.'" Id. (first alteration in original) (quoting Hewlett-Packard Co. v. Brother's Trucking Enters., Inc., 373 F. Supp. 2d 1349, 1352 (S.D. Fla. 2005)). "Further, the licenses that [the defendant] holds, its previous transactions with [the plaintiff], and its label in the Contract are not dispositive to its role during this specific transaction." Id. (citations omitted). In Richwell, the court found that that defendant was a carrier even though it did not carry the load (lobsters) itself,

but "handled the route, the packing, the coordination of travel and release of the lobster[s] to another party without any involvement from [the shipper], rather than acting as the 'go-between' to connect [the shipper] and [the third-party that supplied the truck and driver] to complete the shipment." Id. at *4 (citing Essex Ins. Co., 885 F.3d at 1302; 49 US.C. 13102(23)). The Richwell court concluded that the defendant "did not broker an agreement between a carrier and [the shipper]" because the defendant "and no other entity, arranged for all of the details relating to the pickup of the load of lobster." Id. Specifically, the defendant "engaged the driver and truck on the morning of the scheduled pickup," the shipper "had no knowledge of who would be transporting the load of lobster, and [the defendant]'s representatives were the sole point of contact for the individuals who claimed to work for [the company that supplied the truck and driver]." Id.

Because the analysis of whether defendant is a carrier or a broker is fact specific, it may not be appropriate for summary judgment. Essex, 885 F.3d at 1302 ("This is necessarily a case-specific analysis, and as a result, summary judgment might not be appropriate in many cases." (citing Nipponkoa Ins. Co., 2011 WL 671747, at *5)). Nonetheless, even a company that "carries some shipments and brokers others, can insulate itself from strict liability with respect to a particular shipment if it makes clear in writing that it is merely acting as a go-between to connect the shipper with a suitable third-party carrier." Id. However, "[w]here no such writing exists, . . . the operative inquiry is this: pursuant to the parties' agreement, with whom did the shipper entrust the cargo?" Id.

The record contains no writing that clearly states that Defendant acted as a broker with respect to the July 21, 2018 shipment. Defendant relies, instead, on the Affidavit of Alan Sweis to support its position that it acted solely as a broker in connection with Plaintiff's July 21, 2018 shipment. Sweis was Alliance's contact with Plaintiff and arranged for KG's to provide motor

7

carrier services for the shipment of Plaintiff's goods to locations in Georgia on July 21, 2018. (Sweis Aff. ¶¶ 3, 4.) He made arrangements for a total of 14 shipments for Plaintiff between May 8, 2018 and July 21, 2018 (including the July 21 shipment). (Id. ¶ 6.) In each instance, Sweis arranged for carriers other than Alliance to take Plaintiff's shipments. (Id. ¶ 7.) Sweis asserts that he only provided brokerage services for Plaintiff and that he "was very clear in [his] representations that Alliance Shippers, Inc. was serving as a broker to arrange a motor carrier to be engaged to transport Plaintiff's mixed-load of goods pursuant to Plaintiff's specific requirements." (Id. ¶ 8.) Sweis states that, on July 20, 2018, he received an email from Plaintiff asking for the "normal Saturday Run," the transportation of goods from Plaintiff to various locations in Georgia. (Id. ¶¶ 11, 13.) Sweis responded by text that he "would try to secure a driver/pickup for his shipment at his requested rate." (Id. ¶ 11.) KG's later accepted the rate and agreed to provide motor carrier services for Plaintiff's shipment to Georgia. (Id. ¶ 17.)

As part of his work for Alliance, Sweis tracked the location of his customer's load and communicated that information to his customer once in the morning, he would also provide a second update in the early afternoon if requested. (Id. ¶ 23.) On July 21, 2018, Marson requested numerous updates of the location of Plaintiff's shipment, which Sweis attempted to provide using "Macro Point." (Id. 24.) However, at one point, KG's driver disconnected from Macro Point and Sweis could no longer track the load using that system. (Id.) Sweis also contacted KG's driver by telephone to provide updates to Marson. (Id. ¶ 25.) During the course of the shipment, KG's driver abandoned the load and KG's had to find a second driver. (Id. ¶ 26.)

Plaintiff maintains that Alliance acted as a carrier with respect to the July 21, 2018 shipment because it took responsibility for that shipment. Plaintiff relies on Defendant's website, which expresses its "Commitment to the Perfect Shipment®." (Pls.' Ex. A.) The website says

8

that Alliance "ha[s] dedicated [itself] to providing The Perfect Shipment® to our customers" and that "The Perfect Shipment® means: Pick up the shipment on time[;] Deliver the shipment at the time requested[;] Deliver the shipment without exception[;] Provide an accurate freight bill." (Id.) Defendant also states on its website that it "measures all shipment activity from pickup to destination" and that "[t]his information is then reported and reviewed with our selected carriers to identify transportation events unique to each shipper. Our proprietary state-of-the art tracking system, has more than 60 distinct checkpoints ensuring on-time pickup and delivery." (Id.)

Plaintiff also cites to evidence that it "was not advised that KG's Southeast Trucking, LLC ("KG's") would be involved in the transaction until significantly after the delivery window [for its goods] was missed" and "Plaintiff has never spoken to a representative from KG's." (Pl.'s Ex. B at 10-11.) Plaintiff also points out that the invoice it received from Alliance billed it for "transportation services" from Greenwood Mushrooms to Atlanta and does not mention KG's. (Pl.'s Ex. L.) Plaintiff further points to evidence that Sweis assured Greenwood that Alliance would take care of the delivery and evidence that Sweis assured Plaintiff that if he couldn't find a carrier on Friday evening (the 20th), he would be up at 5 a.m. on the 21st to work on it, and later confirmed via text that Alliance would deliver the Saturday load to Atlanta. (Pl.'s Ex. B at 8-9.)

We conclude that Plaintiff has satisfied its burden on summary judgment of "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that establish the existence of a genuine issue of material fact regarding whether Defendant acted as a broker with respect to Plaintiff's July 21, 2018 shipment. Specifically, Plaintiff has cited to record evidence that Defendant "engaged the driver and truck on the morning of the scheduled pickup" and Plaintiff "had no knowledge of who would be transporting the [mushrooms], and [the defendant]'s representatives were the sole point of contact for the individuals who claimed to work for [the

9

company that supplied the truck and driver]." Richwell, 2019 WL 3816890, at *4. Plaintiff has also cited to record evidence that could establish that Defendant "legally bound itself to transport [Plaintiff's] goods by accepting responsibility for ensuring the delivery of the goods." Tryg, 767 F. App'x at 287 (citing Essex Ins., 885 F.3d at 1301). Specifically, Plaintiff has cited the representations made by Defendant on its website regarding its "Commitment to the Perfect Shipment" and Sweis's statements in his Affidavit that he repeatedly checked on the location of Plaintiff's shipment after it was picked up by KG's and communicated the results of those checks to Plaintiff. Accordingly, we conclude that there is a genuine issue of material fact regarding whether Defendant acted as a broker with respect to Plaintiff's July 21, 2018 shipment of mushrooms to the Atlanta area and, consequently, whether Defendant may be subject to liability under the Carmack Amendment in connection with the July 21, 2018 shipment.

2. Damages

Defendant also argues that, even if it could be subject to liability under the Carmack Amendment in this case, it is entitled to summary judgment with respect to Count I because Plaintiff cannot establish damages. "To recover under the Carmack Amendment, a plaintiff must first establish a prima facie case by proving the following three elements: '(1) delivery of the goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) the amount of damages.'" Mecca & Sons Trucking Corp. v. White Arrow, LLC, 763 F. App'x 222, 225 (3d Cir. 2019) (quoting Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc., 318 F.3d 458, 461 (3d Cir. 2003)). "To establish the damaged condition of the goods upon delivery, a plaintiff must present direct or circumstantial evidence that is 'sufficient to establish by a preponderance of all the evidence the condition of the goods upon delivery.'" Id. (quoting Beta Spawn, Inc. v. FFE Transp. Servs., Inc., 250 F.3d 218, 225 (3d Cir. 2001)). "For the purpose of a

Carmack Amendment claim, damages are ordinarily measured by 'the difference between the market value of goods at the time of delivery, and the time when they should have been delivered.'" Id. at 226 (quoting Paper Magic, 318 F.3d at 461). "The market value may be determined by the invoice price, or the contract price, less any recovered value from salvage or resale." Id. (quotations omitted).

Defendant argues that Plaintiff cannot establish the damaged condition of the goods because Plaintiff directed its customers to reject the mushrooms prior to their arrival and before anyone had an opportunity to inspect the mushrooms, thus making it impossible to determine the salvage value of the mushrooms at the time of delivery. (See Sweis Aff. ¶¶ 28-29 (stating that Marson told Sweis he was having the receivers reject the goods and that "no reasonable inspection of any of the mixed-load goods was ever performed prior to rejecting the mixed-load of goods").) Plaintiff, however, maintains that the mushrooms in the July 21, 2018 shipment had no salvage value because they had begun to spoil by the time they reached their destinations, two days after they were supposed to be delivered. Plaintiff relies on an email from Restaurant Depot stating that it had rejected the mushrooms because they had begun to spoil. (Pl.'s Ex. N.) This email includes a picture of the mushrooms. (Id.) Plaintiff contends that, because its mushrooms were spoiled and had no salvage value at the time of delivery, its damages are determined by the invoice price of the spoiled mushrooms and its cost to cover the replacement mushrooms. See Mecca & Sons Trucking, 763 F.3d at 227 (concluding that the invoice price of the damaged goods was the "proper amount of damages" where the damaged goods had no salvage value).

We conclude that Plaintiff has satisfied its burden on summary judgment of "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), specifically the email from the Restaurant Depot stating that the mushrooms had begun to spoil, that establishes the existence

of a genuine issue of material fact regarding the amount of damages it suffered due to the late delivery of its mushrooms. As we have also concluded that there is a genuine issue of material fact regarding whether Defendant may be subject to liability under the Carmack Amendment in connection with the July 21, 2018 shipment, we deny the Motion for Summary Judgment with respect to Plaintiff's Carmack Amendment claim in Count I of the Complaint.

B.       Counts II and III – The State Law Claims

Defendant argues that Plaintiff's state law claims should be dismissed because they are preempted by federal law, specifically the preemption provisions of the Interstate Commerce Commission Termination Act, 49 U.S.C. § 14501(b) ("ICCTA") and the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c)(1); as well as the Carmack Amendment.

1.       The ICCTA and the FAAAA

The ICCTA preemption provision states as follows:

> no State or political subdivision thereof and no intrastate agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker.

49 U.S.C. § 14501(b)(1). The FAAAA's preemption provision similarly states that:

> a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property."

49 U.S.C. § 14501(c)(1). Defendant argues that these Acts preempt Plaintiff's common law breach of contract and UTPCPL claims. See Alpine Fresh, Inc. v. Jala Trucking Corp., 181 F. Supp. 3d 250, 256 (D.N.J. 2016) (stating that "the ICCTA expressly preempts state law claims as to brokers

with respect to motor carrier arrangements" (citing Phoenix Ins. Co. Ltd. v. Norfolk S. R.R. Corp., 2014 WL 2008958, at *16-17 (D.N.J. May 16, 2014)); see also id. at 257 (concluding "that the express prohibition against state regulation of 'intrastate services of any . . . broker,' and 'related to a price, route or service of any . . . broker,'" precluded state law claims for negligence and breach of bailment (alterations in original) (citations omitted)); Krauss v. IRIS USA, Inc., Civ. A. No. 17-778, 2018 WL 2063839, at *5 (E.D. Pa. May 3, 2018) (concluding that common law claims against broker for negligent hiring (of the carrier) arising from dangerous loading of merchandise by carrier hired by broker were preempted by the FAAAA because the claim arose from the broker's core service, i.e., "hiring motor carriers to transport shipments" (quotation omitted)).

"However, the FAAAA and ICCTA do not preempt routine breach of contract claims." Hartford Fire Ins. Co. v. Dynamic Worldwide Logistics, Inc., Civ. A. No. 17-553, 2017 WL 3868702, at *3 (D.N.J. Sept. 5, 2017) (citing Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 229-230 (1995); Lyn–Lea Travel Corp. v. Am. Airlines, 283 F.3d 282, 287 (5th Cir. 2002); Huntington Operating Corp. v. Sybonney Express, Inc., Civ. A. No. H–08–781, 2009 WL 2423860, at *1 (S.D. Tex. Aug. 3, 2009); Chatelaine, Inc. v. Twin Modal, Inc., 737 F. Supp. 2d 638, 643 (N.D. Tex. Aug. 20, 2010)); see also AMG Resources Corp. v. Wooster Motor Ways, Inc., Civ. A. No. 15-3716, 2019 WL 192900, at *4 n.7 (D.N.J. Jan. 14, 2019) (recognizing that the ICCTA and FAAAA do not preempt "routine[] breach of contract claims" (citing Mrs. Ressler's Food Prods. v. KZY Logistics, LLC, Civ. A. No. 17-2013, 2017 WL 3868703, at *3 (D.N.J. Sept. 5, 2017); Hartford Fire Ins., 2017 WL 3868702, at *3). We conclude, accordingly, that the ICCTA and FAAAA do not preempt Plaintiff's alternative claim for breach of contract under Pennsylvania common law in Count II.

Defendant relies on Rowe v. New Hampshire Motor Transport Association, 552 U.S. 364 (2008), to support its argument that the FAAAA preemption provision applies to preempt state consumer fraud laws such as the UTPCPL. The Supreme Court noted in Rowe that it had previously examined an identical preemption provision in the Airline Deregulation Act of 1978 ("ADA") and found that the ADA preempted "States from enforcing their consumer-fraud statutes against deceptive airline-fare advertisements." 552 U.S. at 371 (citing Morales v. Trans World Airlines, Inc., 504 U.S. 374, 391 (1992); American Airlines, Inc. v. Wolens, 513 U.S. 219, 226-228 (1995)). The Rowe Court instructed that the preemption provision of the FAAAA should be interpreted in the same way as the preemption provision of the ADA. Id. at 370. We conclude, therefore, that the FAAAA preempts state consumer protection laws such as the UTPCPL to the extent that they have "'*a connection with, or reference to*,' carrier 'rates, routes, or services,'" even if the "state law's effect on rates, routes, or services 'is only indirect.'" Id. (quoting Morales, 504 U.S., at 384, 386).

Plaintiff contends that the FAAAA does not preempt its UTPCPL claim because this claim does not seek compensation for the damage to its shipment, but challenges misrepresentations allegedly made by Defendant in connection with its "Commitment to the Perfect Shipment."[2] However, the Plaintiff's UTPCPL claim alleges that Defendant violated the UTPCPL claim because it did not deliver Plaintiff's goods on time, notwithstanding its representations in its "Commitment to the Perfect Shipment" that it would do so. We conclude that Plaintiff's UTPCPL

---

[2] Plaintiff asserts in its Memorandum that its UTPCPL claim also seeks damages for Defendant's alleged mismanagement of its investigation and response to Plaintiff's claim for compensation in connection with the July 21, 2018 shipment. However, Count III of the Complaint does not mention this mismanagement and Plaintiff's Memorandum does not explain the basis of a UTPCPL claim arising from such mismanagement. We conclude, accordingly, that Plaintiff's UTPCPL claim in Count III of the Complaint pertains only to Defendant's "Commitment to the Perfect Shipment."

claim pertains to Defendant's services as a carrier or broker related to the transportation of property and is therefore preempted by the FAAAA, which preempts state laws that relate to a service provided by a motor carrier "with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Consequently, we grant the Motion for Summary Judgment with respect to Plaintiff's UTPCPL claim in Count III of the Complaint.

### 2. The Carmack Amendment

Defendant also argues that it is entitled to summary judgment as to Plaintiff's breach of contract claim because that claim is preempted by the Carmack Amendment. "There can be no doubt that '[t]he Carmack Amendment generally preempts separate state-law causes of action that a shipper might pursue against a carrier for lost or damaged goods.'" Sompo Japan Ins. Co. of Am. v. B&H Freight, Inc., 177 F. Supp. 3d 1084, 1086 (N.D. Ill. 2016) (alteration in original) (quoting REI Transport v. C.H. Robinson Worldwide, Inc., 519 F.3d 693, 697 (7th Cir. 2008)). However, "[b]ecause brokers are not liable under the Carmack Amendment, it does not preempt a claim for failing to perform whatever duties they might have under state law." Id. at 1087. See also Heliene, Inc. v. Total Quality Logistics, LLC, Civ. A. No. 18-799, 2019 WL 4737753, at *2 (S.D. Ohio Sept. 27, 2019) (concluding that, because the Carmack Amendment does not mention brokers, it "does not preempt state law claims against brokers" and noting that the "'overwhelming majority' of courts who have considered this issue have reached the same conclusion" (listing cases)). We conclude, accordingly, that if the trier of fact finds that Defendant is a broker rather than a carrier with respect to Plaintiff's July 21, 2018 shipment, Plaintiff's alternative breach of contract claim is not preempted by the Carmack Amendment. As we have also concluded that Plaintiff's alternative claim for breach of contract under Pennsylvania common law is not

15

preempted by the ICCTA and FAAAA, we deny Defendant's Motion for Summary Judgment as to Count II of the Complaint.

**IV.     CONCLUSION**

For the reasons stated above, we grant Defendant's Motion for Summary Judgment with respect to Count III of the Complaint and we deny it with respect to Counts I and II. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.